May it please the Court. Good morning, Your Honors. My name is Timothy Ofak, with the Law Firm of Wiener-Brotz to Keiter PC, to represent Appellant Academy Mortgage. The District Court committed clear legal error by applying a multiplier in this case. The District Court did not identify or discuss any factor that was not taken into account by the Lodestar. Furthermore, at no point did the District Court find that the amount of the attorney's fees calculated under the Lodestar method was unreasonably low or underestimated counsel's true market value. We believe that the legal errors warrant reversal. Now, with respect to a fee-shifting statute such as the False Claims Act, attorney's fees are determined using the Lodestar method, which is presumed to be reasonable. The case, the Supreme Court case that controls here is Purdue. Purdue held that the... You know that means lost. Hmm? You know that Purdue means lost. I don't know what that means for your case, but that's what Purdue means. Purdue held that the presumption may be overcome in those rare instances in which the Lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee. And here that's one of the main issues. The District Court just did not identify any factor that was not subsumed by the Lodestar. Let me ask you this, counsel. I get your point that there was a lot of discussion, a lot of analysis about the Lodestar. The court discounted that somewhat. But I thought the court did talk about the rare or exceptional circumstances here. This was, to the court's knowledge, certainly to mine, the first time when both the parties that should be in favor, certainly the government, vigorously opposed this. Indeed, the government itself indicated it's the first time it had ever done so. And I think that the District Court pointed out that, in this case, that the attorneys, through their basically just gut-grinding diligence and investigation and hanging in there despite the enormous odds, provided an exceptional service from a market perspective that was above and beyond what the Lodestar provided. I find that to be different than what you're suggesting. You may suggest it's all subsumed in the analysis below. But this is a first. I've only been on the court 20 years. I've never seen a case when the government opposed getting a lot of money. But it did in this case. And it just basically wrote it up. Didn't want to be involved. And yet these folks continued to get it and won a substantial award, as you know. So what am I missing here? Your Honor, the court did determine that Relators Council achieved an exceptional result. But the court did not explain why that was not subsumed by the Lodestar. And what the court did is said there's an exceptional result, and that's directly attributable to the investigative work and the amount of investigative work that was done. And in the court's opinion, the court listed all of the amount of the work that was done. But all of that was accounted for in the hours that were spent on the investigative work. And because of that, it's double counted, which is not permissible. I get your argument. But, again, most lawyers, certainly most successful class action lawyers would say, wow, the government's opposed to this. They're not going to help. I'm out here. I'm hanging out by myself for years and years and years. I'm not going to do this anymore. But that's not what happened here. I get your point about it being subsumed. Certainly some parts are included. But the district court, who has discretion, concluded that this was above and beyond the cause. On the exceptional result, it showed extraordinary diligence and extraordinary effort that was not represented by the Lodestar. At least that's the way I read the district court's analysis. Is that wrong? I believe it is wrong, Your Honor, because the court never found that the exceptional result here was due to superior attorney performance. What it did is it focused on the investigative work. It doesn't have to do that, though. It doesn't have to find that it's rare or exceptional circumstances. That's what Perdue says. And I thought, at least my analysis of it, he did find it was rare. It never happened before. The government had never done this before. That's rare. And he found it was exceptional because of that and their continued diligence in proceeding. He was very much aware of the fact that he didn't want it to be subsumed into the Lodestar calculation. That's the way I read the district court's opinion. So, Your Honor, under Perdue, an exceptional result is not enough. No, you're confusing the term exceptional result. I get that. But Perdue says you have to evaluate whether there was a rare or exceptional circumstance. So the word exceptional is not poison here. Perdue talks about that. I focus more on the rare part. This was a rare, rare, rare result. Why isn't that worthy of some extra benefit? Your Honor, when you get to the rare or the exceptional result under either, then you would have to look to, okay, what are the factors under Perdue? So here the rare result would be equated to, under the Supreme Court, to exceptional attorney performance. And the Supreme Court only provided three instances where the superior attorney performance warrants a multiplier. One would be where the true market hourly rate is not captured. And we're not talking about that here. And we're not talking about that here, right? Well, the court never provided the proper legal analysis under Perdue. It never considered those three rare and exceptional circumstances that can trigger a multiplier. So it's your argument basically that something being rare is a necessary but not sufficient condition to apply a multiplier. That's correct, Your Honor. Yes. If you decide it's rare-exceptional, then you move on to the three factors that were identified. And do you challenge the rare factor or the rare prerequisite? I believe Perdue characterized it as rare, as rare and exceptional circumstances. Okay. And so here, once you get past the rare and exceptional circumstance. Well, I'm asking, do you challenge whether or not this is rare and exceptional circumstance? We challenge that the court apply the correct legal standard when considering whether it was rare and exceptional. So, for instance, Your Honor, under Perdue. Oh, your answer is what? Yeah, I didn't get that. Yes, we are challenging. Okay, thank you. Yes. Then why is it not rare and exceptional? It's not rare and exceptional because the court committed legal error when it was applying the standard in Perdue. As part of the Perdue standard, you look to the superior attorney performance, but you also look to the performance of the other parties involved. Here it was the Federal Government. And in that instances, the court never considered whether the Federal Government made any concessions or was inadequate or made inadequate arguments. So, for instance, in this case. Why would you pay the multiplier? Why doesn't the government pay the multiplier? Because they're the one that made this rare motion. It's by statute, Your Honor. So under the False Claims Act, when under the fee-shifting provision, it is the defendant that plays attorney's fees. Okay. What would the district court have had to do, in your opinion, to meet the requirements of Perdue with respect to the multiplier? With respect to the multiplier, once it gets to the point where it believes that there is a rare and exceptional circumstance, it found here there was an exceptional result. Under Perdue, the court equated exceptional or superior result to superior attorney performance. It did not determine there was superior attorney performance. But if it had, then you get to the three instances where a multiplier could be aborted. And that would be, one, there is an the hourly rates was not the true hourly rates in the Lodestar. The other instance would be the attorney's work involved in extraordinary outlay of expenses. Or, and the last one is an exceptional delay in the payment of expenses. But here, the court was in no way limited in calculating the Lodestar. The court went through the care factors. It did a careful consideration of the Lodestar analysis. And in footnote 8 of the opinion, it notes that it was in no way limited when calculating the Lodestar. And so, therefore, because it wasn't limited in calculating the Lodestar, here there is no basis on the record for a multiplier. And we reviewed this for abuse of discretion, right? It is abuse of discretion with respect to an inaccurate view of the law. With respect to facts, it would be. Well, certainly that's one way to get around abuse of discretion if the law was improperly applied. But the standard that Judge Chen was using was abuse of discretion. It would be abuse of discretion unless the legal analysis applied by the court was an error. Again, if the law was wrong. Yes. And you think there's a legal error here, too, right? Yes, Your Honor. The court did not properly apply Purdue and the requirements of Purdue. It did not outline them. It did not discuss them. So there is a clear legal error. And on appeal, whether or not the district court must have, should have dismissed, based off the government's motion, that was not reviewed on the merits, correct? That was just a jurisdictional by the Ninth Circuit. That is correct, Your Honor. It was a jurisdictional issue raised to a sponte by the Ninth Circuit. It was an interlocutory appeal. The Ninth Circuit disagreed and believed it should not have been brought in that manner. So on the merits, we don't know if that was the right answer. That is correct, Your Honor. And has any court ruled on that yet? I don't think up to now it has, but whether or not you have to dismiss if the government moves to dismiss under the False Claims Act. The standard changed while this case was pending. At the time it was decided by the district court, there was a split in the different circuits. And then subsequently in Polanski, the Supreme Court sided with the more lenient standard. But that was not in place at the time that the district court ruled on it here. Is your big picture understanding of what the Supreme Court is trying to do here to just bring as much as possible of the AFIS calculation into the basic Lodestar standard and just have everything judged in terms of the hours worked and the multiplier? Is that your read of the big picture movement in the law? With respect to under Purdue, Your Honor? I just want to make sure I understand the question. What Purdue is doing with regard to the various approaches that courts had taken before Purdue? Yes, Your Honor. It's essentially saying that the Lodestar in almost every instance is going to be reasonable. And in only very limited circumstances would there ever be a situation where the Lodestar was not reasonable, but then you would have to articulate why it's not. And here the district court did not articulate why, providing no methodology whatsoever as to how it got to the multiplier. It essentially picked it out of the air, went with what related counsel asked for, and then arbitrarily decreased it. There was no methodology applied. Can you put some flesh on the bones? I mean, I get the point about the more complicated a case, the more hours will be spent on it, and so complexity can be wrapped up in the hours part of the Lodestar method. But can you give an example of, in your view, what would be exceptional skill that would justify a multiplier? Exceptional skill that would justify a multiplier typically arises in the cases that I've seen where there is some sort of depressed hourly rate. So when you're under an extreme time crunch, for example. I'm talking about attorney skill, you know, except attorney. So you think that if you have an attorney who already knows this area of law, you're saying that could be exceptional skill, and so they were able to get the same result with less hours on this case because they learned it all for the last case that was of the same nature? No, Your Honor. I think under that example, that would be a situation where a multiplier is definitely not warranted because they would already have information about that case. But it's not just that you have experience in the case because then that is subsumed by the Lodestar. So, for instance, an example where a multiplier may be warranted is, again, where you have a situation where there is an incredibly tight time frame with respect to certain motions that would need to be filed, something along those lines. And then, as well, you're achieving a result that is extraordinary. In your judgment, is there a case or are there cases that meet the requirements of Purdue, the rare and exceptional, and a multiplier was appropriately granted? Yes, Your Honor. There is a case where, I just want to make sure I get the name correct for you, under Kelly, Your Honor. Kelly, right. That is an example, yes. That was dealing with the hourly rates were depressed. There was a superior performance in extreme time pressure, and the court went through a very methodical process of determining what multiplier should be applied and why. Can I ask, do you think the taking on extreme risks, like, you know, these counsels did, that should be, that would warrant a multiplier? No, Your Honor. Extreme risk would not be considered. Mr. Purdue explicitly says that it cannot, risk cannot be considered, or continued risk cannot be considered. Purdue for purposes of a multiplier. Yes, Your Honor. That is correct. I know. Very well. Thank you very much. Now, you're going to come on later, right? You're coming now. No, Your Honor. Well, I'll come on later for the other. Correct, for the other point. Okay, you're coming on for the multiplier issue. Very well. And this is Adrienne Herald, right? Correct, Your Honor. Please. Good morning, and may it please the Court. My name is Adrienne Herald, and I represent the relator, Ms. Thrower. I'd like to address a couple points made by opposing counsel. To start, nothing Academy has said undermines that this case is the definition of rare and exceptional. Ms. Thrower is the first relator in the history of the False Claims Act to defeat a government's motion to dismiss. That's what the government confirmed to this Court the last time this case was on appeal. Ms. Thrower went on to secure a massive settlement. Academy agreed to pay $38.5 million to settle allegations that they submitted false information about loans to get government insurance, which put families into homes they could not afford, set them up for foreclosures, with taxpayers covering the losses. This case restored nearly $27 million to the U.S. Treasury. The district court here, the same district court that oversaw the merits litigation for seven years, issued a careful and detailed fees decision. It reviewed the entire record and all of the evidence. It identified and applied the correct legal standard. And it fully explained why this case's survival was unexpected, against stacked odds, and a factor not subsumed in the Lowe-Starr calculation. Now, opposing counsel is incorrect that the district court did not make the necessary findings under this factor. It's true that you can't just have good results that's necessary but not sufficient. The district court here followed the Supreme Court's precedent for how to evaluate this. As the Supreme Court in Purdue articulated this factor, it's results that are more favorable than would have been predicted based on governing law and the available evidence. And here, relators' attorneys, through their skill and perseverance, continue to push the case forward, not only at the point when the government declined to intervene, at which point 6% of cases— But how is this not accounted for by Lowe-Starr? The district court here was very careful not to double count the factors. So let's look at what the court did with the Lowe-Starr. The relator, in preparing her fees application, first cut the number of hours that her attorneys claimed in the recorded time by over $1 million. The district court then issued a fees order that was $5 million less than what she requested, both by cutting the number of hours and drastically reducing— Well, that just shows that the district court did the Lowe-Starr properly. So I guess what I want to know is why does the Lowe-Starr not account for the exceptional nature of this? It all has to do with the rates here, Your Honor. Okay. The district court chose rates that pegged to what T&S, Thomas & Solomon Relators Lead Law Firm, what they received in this district in 2021 in cases that are not comparable to this case here. So is your argument that the rates should have been higher? Our argument was that this — the incredible result of this case, due to the superior attorney performance, needed to be accounted for one way or another, in higher rates or through a multiplier. And the district court, as you say— Well, so you're saying that the rates were — the district court used the improper rates in the Lowe-Starr. The district court did not abuse its discretion in determining— Because those are separate questions, whether or not, you know, attorneys is probably being compensated and whether or not a multiplier applies. So it sounds like you're saying, like, the Lowe-Starr was too low, and so, therefore, it's okay to give the multiplier. But I don't think that's what Perdue says. It is correct that that's what I'm saying here, is that the Lowe-Starr does not account for the remarkable result here and how it would be compensated in the market. And Perdue recognized, as the order here even quotes, the Perdue court explained that the purpose of the multiplier is to account for factors not already incorporated into the rates that attorneys charge. So— Right. So I guess it just sounds like you're disagreeing with the district court's rate determination, and you should have appealed that. And you can't just backdoor it in with the multiplier. Not quite, Your Honor. Okay. The importance of rates here is to show how the district court didn't double-count factors, and the rates are where the extraordinary results here are not incorporated into the Lowe-Starr. The district court in the hearing previewed that this was — this was district court's approach in this case, that the extraordinary results under the circumstances of this case would be accounted for in the multiplier as opposed to the rates. And if we look— Well, I guess, is that allowed? I mean, it sounds like what you're saying, the district court artificially lowered the rate, but then topped it up on the multiplier. That doesn't seem like what Perdue tells us we should be doing. It says that you should just calculate the Lowe-Starr by itself independently, and then, given that, then if that's not — if something is not accounted for, then you could use the multiplier. That's correct, Your Honor. And so there are two things going on here. Even if T&S received the prevailing market rates that they had requested, a multiplier would still be appropriate in this case. The way that the district court went about its method of calculating T&S's rates for the Lowe-Starr analysis further illustrates how they're being undercompensated under the facts of this case by pegging them to cases that were much simpler, not extraordinary, and much faster. But the Perdue approximation, and the Supreme Court italicized that word. But everything you've said, like it's shorter, easier, why is that not accounted for in the Lowe-Starr? Presumably it would be more attorney hours that would be required to defeat the motion, and so it seems like the Lowe-Starr would take account of that. The Lowe-Starr, in the vast majority of cases, does. But as the Supreme Court in Perdue recognized, enhancements due to the extraordinary results are rare, but not non-existent. And it may happen when the services rendered exceed expectations for what you would expect when it comes to the rates charged. And if we look at even how the Supreme Court in Perdue talked about the Lowe-Starr, once you determine this rough approximation of how a fee-paying client would ordinarily pay an attorney with similar skills and similar qualifications, the court then looks at adjusting the Lowe-Starr up or down. And result has always been the most important factor after the Lowe-Starr. If you get limited results, the Lowe-Starr can be adjusted down. And the way I see this case is that the district court awarded $3 million in attorney's fees just for winning a motion to dismiss. Is that right? Is that the way to look at it? No, Your Honor. The district court that's the event here that's most critical. Yes. That's how I see the case. And that just seems weird. Well, if weird, perhaps not an abuse of discretion. Here the district court fully explained its reasoning and relied on the historic facts of this case. It explained how the motion to the fee and the motion to dismiss was something no one had ever done before until this case. And opposing counsel is wrong. The district court did not connect that to attorney performance. At ER 153, the district court did make that express finding that the case's survival was directly attributable to Thomas and Solomon's superior tenacity, skill, perseverance in this case. It talked about the scope of the scope and breadth of its investigation, how the district how the How is that not accounted for in the Lodestar? I mean, the scope and breadth of an investigation is attorney hours and paralegal hours. Right. It wasn't just that they conducted an investigation. It's that they were so good at uncovering nationwide fraudulent practices that it put into sharp relief that the government's expressly relied on the fact that, to opposing counsel's time pressure point, that Thomas and Solomon was fighting a two-front battle here, not only fighting the government, but also battling Academy's motion to dismiss at the same time. But again, that would be accounted by hours. Do you agree that risk is not allowed to grant a multiplier? Because what I do see for sure is that those attorneys took an extraordinary amount of risk taking this case and continuing to fight this case. Is that justifiable for a multiplier? Under federal fee-shifting laws like this one, contingent risk is not usually a factor supporting a multiplier. That is subsumed. And here the district court walked through all those other factors that are subsumed, the undesirability of this case, the time and effort, all those curve factors that this court has subsumed in cases like Whirlpool and others. Can I just change the focus to a different case, Kelly, specifically? According to Kelly, a multiplier is appropriate when, and I'm quoting, plaintiff's counsel demonstrates the value of her services exceed what the court determines to be the prevailing market rate for otherwise comparable attorneys. The way I look at the district judge's analysis, the lodestar was the otherwise comparable attorneys analysis, basically. This is what, based on how they racked with everybody else, that's what they would get. And then the court considered whether the results were such that a multiplier was appropriate. Is that a correct analysis? That's correct. And that's how the Supreme Court has talked about this factor as well. And so in Kelly, this Court described that extraordinary results, as in non-PLRA cases, not just limited to PLRA cases, can support an increase to the lodestar because that lodestar is that starting place, that approximation of the ordinary services normally provided, not the extraordinary results here. And Mr. Thomas, in his declaration, did detail how no other FCA practitioner in or out of government thought this case was going to survive. Everyone thought it had no chance. It statistically had no chance, yet the — due to TNS's superior skill here, which is a finding that was on abusive discretion, this case didn't go on. But for the survival, it got a significant recovery. I'm still trying to get my head around a little bit the district court's reliance on the factors of perseverance. And I guess you can imagine two different FCA cases, one in which the plaintiff's counsel, the relative's counsel billed, you know, 4,000 hours, but the government was supporting them, and then one in which the relative's counsel billed 4,000 hours and the government was not and was opposing the case. And you're saying that there's something that's not really quantifiable, but there's something that's different in kind between those cases, and that's what perseverance relates to, that's not captured just in the number of hours and the prevailing market rate? Yes, Your Honor, if those attorneys also go on to defeat the government. And it's because of the perseverance or the grit, I think, is the distinguishing factor there that makes it an exceptional case? That could be one of the factors a district court could look at. It can also look at the two-front battle. But here, the district court did rely on facts and came to the conclusion there was superior performance. It's very different than the fee order at issue in Purdue, let's say, where the district court said, these are the best attorneys I've seen in my 27 years on the bench. And the Supreme Court explained, while that's certainly sincere, not a reviewable basis here. Those are subjective factors. If the government had not moved to dismiss, would the Relatives Council have gotten some sort of assistance from the government that would have reduced the number of hours they would have spent, or would the Relatives Council still have to do all the same work? I mean, it's possible for the government to be neutral, right? Correct. Okay. The government can be neutral, and in that circumstance, only 6% of FCA cases even go on to be successful, with the average recovery being 75,000. Okay. But it can be neutral, and we're not saying those are extraordinary cases. Here, there is an undisputed fact that this relator was the first to survive. So if the government was neutral, it wouldn't necessarily mean that you would expect to spend any more or less time on the case than you spent? Than you would spend? Than you spent when the government moving to dismiss, opposing your case. If I understand Your Honor's question correctly, you have to spend more effort to defeat the government than opposing the case, correct? Is it just the government's motion practice that you think made this, the perseverance, so moving to Judge Chin below? It's not just that the government filed the motion to dismiss. It's that if you look at what TNS had to do here, under the facts of this case, the same district court that oversaw the high bar it held TNS to, best summarized perhaps in the record at ER 20, the order denying the government's motion to dismiss. It's not just perseverance here. It's not just that there was motion practice. We're talking about actually overcoming by showing almost a full trial plan of the evidence here. Counsel, why was 1.75 the right number, not 2 or 3 or 4? So the district court ended up at a very reasonable fee. And just to walk through how it did so, it started with the evidence in the record in support of the 2.0 multiplier. It even cites at ER 143 our expert testimony, our expert that the court recognized as the preeminent author of attorneys' fees in California. That particular comment, I think, is at 137. How did the 2 number come from? Where did that come from? It came from the evidence we later presented. It was a comparison against the ---- But what's the argument that 2 is the appropriate number? It's the number that would bring the full compensation more in line with what the market would compensate T&S's attorneys for the results in this case. So this all relates to attorneys' hourly rates, essentially. That's correct. Boiled down is your argument is the hourly rates that was discovered in the Lodestar is too low. Correct, for the circumstances of this case, because the Lodestar is that baseline, what you should ordinarily expect. And if you want to get very concrete, Your Honor, some of our evidence included at SCR 145 to 147, the expert testimony relying on past court orders with fee awards, what firms charge in the area, and include opinions including that the level of expertise, experience, skill, tenacity shown here to accomplish such excellent results would put counsel's rates at the very high end of the Bay Area market for skilled litigators. It discusses what those high rates even could be, and describes that the requested multiplier here would bring counsel's compensation more in line with this market for such a superior performance and result. So this is a long way of saying that we're getting to a much more reasonable fee under the circumstances of this case once you account for the multiplier, a fee that is reasonable, and I say it over time, so I'll stop here. You can finish answering the question, though. Okay, great. Thank you. This fee award here is reasonable, and a reasonable fee has been defined as one to induce competent counsel to come forward and bring meritorious FCA cases, not only to protect the taxpayers, but in the context of this particular federal program, to also protect low-income and first-time home buyers. Thank you. Other questions from my colleagues? It's a very interesting question. We could probably talk about it for a long time, but we're not going to. All right, so now we still need to hear from Mr. Rosen and Mr. Katz. Who's coming first? Everybody. Okay. Good morning. Good morning, Your Honors. As you know, this second appeal concerns the date on which interest should start accruing on whatever the attorney's fees award turned out to be. It really involves the interplay between the Fair Claims Act, Section 3730D2, and the Judicial Code's interest accrual provision, Section 1961A, which the Supreme Court and this Court, all courts have recognized as mandatory on a fee award. Can I interrupt you and ask, why do you think it was the January 2023 order that created the entitlement to fees and not the date of the settlement itself? Well, I appreciate that you cut right to the chase, Your Honor, because on January 27, 2023, the District Court entered the dismissal order. By the Supreme Court's analysis of such orders, including orders entering consent decrees or dismissals, that constituted the judgment, a money judgment in the case. It's the equivalent thereof. Under the case laws, we understand it. The interest is supposed to run from the date of the money judgment. That was a judgment of $38.5 million. Did the District Court have discretion not to dismiss the case after a binding settlement was entered into? Is that part of your answer, or was there no such discretion? Your Honor, you're causing me to go back in my memory of standing before this Court a long time ago. There was argument here that this was actually how hard it is to get a decision adverse to the District Court's, to the government's sponsoring of something. Actually, I did that twice in the District Court in a case called EEOC versus Pan American Airlines, and it went up to the Ninth Circuit at some point on a collateral issue. It's very hard, but it's possible. I recall that Chief Judge Peckham of this Court at that time asked the government's attorneys, you mean I have no discretion to reject the case, and he asked rhetorically, his voice rising, why am I here? Why am I here? Of course he has discretion. He could look at it and say this is inadequate. What if there were multiple relators, for example? And some of them said it's inadequate. He has discretion. But the reality is it's a matter of law. When he entered that order, that became, in effect, a money judgment. Go ahead. I mean, could Academy have come the next day or later that day with the check and paid off its attorney's fees obligation to avoid the running of post-judgment interest, and how much would that check be for? It could have. How much would that check have been for? Well, at the time, I think we made a demand. As of January 2023. Yes, Your Honor. There had been pre-filing of the stipulation negotiations between Academy and attorneys for Ms. Thrower, and at the time, my recollection is a demand was made to which there never was a response of $6,084,492.70. In the S.E.R., in the first case that you just heard, is the reply declaration of Nelson Thomas, which identifies that amount in paragraph 6. Academy knew what it was facing. Yes, but the January order, though, said nothing about attorney's fees, correct? Correct. And so I guess then how is that a money judgment in a civil case recovered in a district court on attorney's fees? It doesn't have to be on the attorney's fees. The law is when entitlement is unconditional. Under the FAC, entitlement was unconditional. That was even conceded. Yes, but that's not a judgment, though. You don't need the attorney's fees judgment. So you're saying, despite 1961 requiring a judgment, you're saying we don't need a judgment to get interest. No, no. You do need a judgment. Okay. But on something else. It doesn't have to be on the attorney's fees. Yes. Is that in 1961? No, it's in the cases, including in the Sixth Circuit, in the unreported case, but the analysis of the Sixth Circuit. Okay. How is that correct under the text of 1961? Excuse me? How is that correct under the text of 1961? Your Honor, the definition of what is a judgment for these purposes, you then have to go through the daisy chain of the Federal Rules of Civil Procedure. And as you go through it, you find and are reminded that attorney's fees are collateral to the judgment. That's all. It basically follows from that. There's a case in the Fifth Circuit in particular. Well, so, I mean, you're saying, like, so after the January 26th order, is it possible that no judgment would ever be made on attorney's fees? It is possible.  So, therefore, how are we supposed to collect? Why would interest start collecting on a judgment that might not exist? At the argument, counsel for Academy conceded that the only circumstance he could think of was if the claim were so outrageous it should be denied in whole. I can think of one other way. I can think of a settlement where it doesn't need to be. Well, a settlement's a possibility, and the settlement would be.  So there's all these possibilities of a judgment on attorney's fees not ever existing. So how, then, can we say from a judgment that had nothing to do with attorney's fees that we should start calculating interest from then? Because the attorney's fees proceedings are collateral to the judgment, if I may. Okay. The judgment, if there is a party who contests the judgment on the merits, an appeal can be taken from that judgment as of right. It's not a discretionary appeal. It's an appeal. The law is very clear that the attorney's fees issue goes separately, and it's totally collateral. It is a separate judgment, correct? And, like, so to appeal an attorney's fees, you have to wait for the judgment in the attorney's fees case, correct? You have to wait for the order. Generally speaking, there is not another order. If you look at the rules again, I believe it's the same. In this case, there was another order. Sorry? There was another order in this case. In this case. Right. But if you look at the Federal Rules of Civil Procedure, I believe it's 56. I could be wrong. It says no additional judgment need be entered on the attorney's fees, for example. That's because the clerk can later calculate it. The clerk can amend the judgment. They do come up with the – when the clerk does it, the clerk comes up with the number, and then that gets docketed, correct? Correct. That's been my experience, too. That's right. But it's not a separate judgment. Do you view the purpose of post-judgment interest as being something other than compensating the judgment debtor for the judgment creditor's failure to pay that judgment as soon as it becomes fixed and finalized? Do you think that is the purpose of post-judgment interest, or is there a different purpose? No, that is the purpose, as the Sixth Circuit identified in the first of its cases, adopting the so-called friend rule from this circuit. That's the purpose. And I say debtor. I think I mean creditor. I misspoke. Okay. And that's my understanding, too, and I'm just having a hard time understanding what amount could Academy have paid all the way back in 2023 to stop the running of interest? Well, it could have been. Your time has expired. I'm sorry. No, you can answer the question. They could have paid what they conceded was due, for example, which they did in essence in their brief on July 17, 2023. But what if that number was disputed? Sorry? What if that number was disputed? They didn't dispute it. I know, but I'm just saying in the hypothetical where a demand is made and the number is disputed, how can they avoid paying post-judgment interest? They can't. They can't. At some point. Okay. But it seems like it's not then aligning with the interest of the interest, right, the purpose of the interest. No, it continues to align with the purpose of the interest because just for one more second, we filed our application in May 31, 2023. A year elapsed due to, in part, Academy's litigation strategy. The Sixth Circuit, in its analysis of when attorneys' interest should run on attorneys' fees, deals with the subject of there are two sides of the ledger. Academy has the use of the money all this time, and we're waiting with our rates having increased, for example, because we're now in 2024 at the point in which we're going to be paid. Ordinarily, if we had filed in January of 2024 or even December, we would have kicked it up to the 2024 rates. That's easily another 5%, which was, in effect, the interest rate. Other questions? Thank you, sir. Thank you. Mr. Rosen. Good morning, Your Honors, and may it please the Court. Joseph Katz on behalf of the defendant, Academy Mortgage Corporation. I apologize. I called you Rosen. I apologize. Sorry about that. I've mixed it up. Got a lot of players here. No worries, Your Honor. The Court should affirm the district court's order setting the accrual date for post-judgment interest on attorneys' fees from the May 31, 2024 order, which was the order that first disposed of Relator's claim for attorneys' fees. The district court correctly found, in line with Ninth Circuit precedent, that post-judgment interest did not accrue from the January 27, 2023 order that approved the party's stipulation of partial dismissal and which explicitly left Relator's claim for attorneys' fees pending. Starting with the text of the January 27 order itself, Your Honor asked about the Court's discretion, asked Mr. Rosen about the Court's discretion. Well, the plain language of the order at issue reserved the Relator's attorneys' fees claim and left it pending. There's arguments been presented that the district court order, because the district court order was final as to the merits, that the judgment for attorneys' fees was necessarily included in that judgment. But that's contrary to the express language of the order. Can I do something a little dangerous here and ask you to help me understand your opponent's argument a little better? They say it's when the interest runs from when there's basically a sufficient definite right to attorneys' fees and that that was the January 2023 order dismissing the merits claims. I mean, on its face, that order is just dismissing claims, right? That's not really awarding anyone any money. That's the settlement agreement that was entered into earlier that creates the right to attorneys' fees under the FCA. You get a portion of the statutory languages, the proceeds of the judgment or settlement. So it's the settlement itself. And the Court's dismissing of the merits action is just memorializing that. So do you – why do you think – is there something that happens with the dismissal that makes that right to the attorney fees recovery more definite than it was even earlier at the time of the settlement agreement? I mean, admittedly, there is a judgment at that time as to the merits of the claims that the Court is dismissing. Well, there's a dismissal. There's a dismissal. I mean, it's not a judgment – is it a judgment in your view on the merits or is it just dismissing the action in light of the settlement? You know, our position is that it's – The January 2023. Yeah, the January 2023 order. Even if you agree that it is a judgment, a final judgment as to the merits, it doesn't – it doesn't include the judgment – a judgment for attorneys' fees. Well, I think – I know that's your position. I'm just asking as to if you understand. Was there something discretionary that the – you know, the settlement wrapped up all the relators, all the claims. Is there something discretionary that happened in January 2023 that made the relators' right to recovery more definite than it was when the settlement agreement was executed? And I'm asking this question because other courts of appeals have looked at somewhat comparable circumstances and said if there's a undisputable right to recovery at any point, that's when the interest starts to run. I know you're disagreeing with that.  I think – I think that this Court's decision in Friend is actually instructive because it does talk about securing entitlement to attorneys' fees. And, you know, the relator kind of latches on to that language and says, oh, my entitlement to attorneys' fees was secured in January 2023. But the secured entitlement that Friend, I think, is referring to is a judgment from the district court for attorneys' fees. Let me ask you this. The statute refers to a money judgment. In your view, was the January 27th dismissal order a money judgment? And if not, why not? I think – I think that it was as to the merits of the case. I don't think that we really dispute that. Because of the settlement agreement and its implications, right? Correct. So basically, at that point, you had a money judgment. And your opponents take the position that once there is a money judgment, it's definite, unlike Friend, which was discretionary. It's mandatory here pursuant to the statute. So they're saying they're going to get attorney fees. The amount is indefinite. Then you, of course, get to the struggle that we're all dealing with. How do you calculate interest on a sum you don't know what it is? Even clever bankers today probably can't do that. So how do we work with that? Well, Your Honor, I think that what you do is you do what the district court did here. And say, well, you know, there was no unconditional entitlement to attorney's fees was enunciated in the district court's January 27th order. So you go to when the district court did enunciate an unconditional entitlement to attorney's fees. And here, that's the May 31st, 2024 order. And so then how do you deal with Friend, though? So it says secure, what is it, entitlement to? Secure the entitlement to attorney's fees, essentially. Right. So why wouldn't that fit into the January order? Because the attorney's fees claim was, by the agreement of the parties and by the order of the court, left pending. It said, you know, the order of the court said that the relator's claims and the United States claims with respect to certain specific conduct were dismissed with prejudice. And then relator's claims with respect to the rest of the allegations were dismissed without prejudice. And then finally, the district court order said that relator's claims as to all other allegations set forth in the case were dismissed with prejudice except for reasonable attorney's fees, quote, which are not dismissed and shall remain pending before the court for disposition. So here we don't really have a problem with that because we have an order that just leaves the— Excludes, like explicitly excludes the attorney's fees. Exactly. Exactly. Can I ask, is it true that there's sometimes no order or judgment in attorney's fees? That's what your friend on the other side said. Yes, Your Honor. I think Copper Licker actually in the Fifth Circuit dealt—well, talked about that situation. I don't think that the court's ruling was dependent on that. But it did discuss the situation where a merit's judgment was silent as to attorney's fees, and it could thereby incorporate a judgment for attorney's fees. We don't have anything, a case like that here in the Ninth Circuit, but that is a case that relator cites on that side. But just as a matter of fact or law, there are cases where attorney's fees are decided, but there's no judgment or order on it. I couldn't point you actually to a case that has decided that. The Fifth Circuit said, you know, in its order in that case, and in the Fifth Circuit case in Copper Licker, there was a judgment for attorney's fees that the court went back to and said that's the starting point for the accrual of fees. It did say in the opinion, it said that there may be a case where merit's judgment will incorporate attorney's fees. But yet— But that's different than saying that there are situations where there is no judgment on attorney's fees. Correct. Yes. I don't think that you can have that post-judgment interest can accrue on nothing. There's no order that incorporates and includes a judgment for attorney's fees. There can't be post-judgment interest under 1961. Strange situation. I mean, how do you have interest accrue on something you don't know what it is? It's quite bizarre. We agree, Your Honor. And I'd like to just briefly address the question in the briefing that Related presented between the difference between kind of a prevailing party statute and a mandatory fee-shifting statute. And I just want to point out that there's really no substantive difference. The difference is simply that when you're supporting a Rule 54 motion for attorney's fees, there's a different basis for the grounds to justify attorney's fees. The Third Circuit decision in your favor says that the other line of this split was based on policy, the lost time and use of money, but that that can be addressed not through post-judgment interest, but through a calculation in the Lodestar. Of course, you're asking for affirmance here, so this question doesn't apply to you. Are you disputing that in the right case, a district judge could account for essentially this sort of more favorable view of post-judgment interest by just coming up with a higher number for fees through the Lodestar method? I don't think that that issue is before the Court right now. Other questions? No. Thanks to all counsel for your very helpful argument in this case. The case of Thrower v. Academy Mortgage Corporation is submitted, and the Court stands adjourned for the day. All rise.
judges: SMITH, BUMATAY, Barker